**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **LEONCE EMMANUEL ALLAN KONATE,**<br>**Petitioner,**<br>**v.**<br>**ANTONE MONIZ, et al.,**<br>**Respondents.** | **Civil Action No.**<br>**26-12083-FDS** |

**MEMORANDUM AND ORDER ON**
**PETITION FOR WRIT OF HABEAS CORPUS**

**SAYLOR, J.**

This is a habeas petition that concerns a noncitizen's due-process challenge to a bond hearing. Petitioner Leonce Emmanuel Allan Konate is a citizen of Burkina Faso who entered the United States on a tourist visa in 2016. He overstayed his visa and has lived in the United States since. In April 2025 he was taken into immigration custody. The next month he received a bond hearing before an immigration judge, who determined that he was a flight risk and denied bond. He did not appeal that decision. One year later, he filed a petition for writ of habeas corpus in this Court contending that the bond hearing was constitutionally inadequate and that his prolonged detention violates due process. Because the Court finds that petitioner must exhaust his administrative remedies before seeking relief in federal court, it will deny the petition without prejudice.

## I. Background

Leonce Emmanuel Allan Konate is a citizen of Burkina Faso. (Pet. for Writ of Habeas Corpus ["Pet."] ¶ 1, Dkt. No. 1). On February 28, 2016, he lawfully entered the United States on

a six-month tourist visa. (*Id.* ¶ 8; DHS Bond Submission 5, Dkt. No. 1-3). He then overstayed his visa. (DHS Bond Submission 5). He has continually lived in the United States since. (Pet. ¶ 3). It appears that he did not pursue any lawful status or relief from removal during that time.

Konate lives in Woonsocket, Rhode Island. (*Id.*). He is the father of four children who are United States citizens and is engaged to be married to a United States citizen. (*Id.*).

In September 2020, Konate was arrested and charged in Rhode Island with several counts of fraudulent credit card and computer use. (DHS Bond Submission 9-18). He was arrested and charged again in October 2021, this time for larceny. (Konate Bond Submission 40-42, Dkt. No. 1-4). The larceny charges were dismissed in January 2022. (*Id.* at 41). On April 2, 2025, he was arrested for obstructing a police officer in Woonsocket, Rhode Island. (*Id.* at 38-39). The following day, he pleaded no contest to misdemeanor obstruction and was sentenced to a one-year suspended sentence and probation. (*Id.* at 39).

Konate was detained by federal immigration officers on April 11, 2025, and placed into removal proceedings. (Pet. ¶ 8). At that time, he reported that he feared returning to Burkina Faso. (DHS Bond Submission 6). He remains detained at Plymouth County Correctional Facility in Plymouth, Massachusetts. (Pet. ¶¶ 4, 8).

On April 14, 2025, while Konate was in immigration custody, the local prosecutor dismissed the September 2020 charges for credit card fraud. (Konate Bond Submission 44).

Konate then requested a bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a). (*Id.* at 5-7). The hearing was held on May 22, 2025. (Pet. ¶ 9). At the hearing, the immigration judge determined that he was a flight risk and that no bond would ameliorate that risk. (*Id.* ¶ 11).[1] She denied bond on that basis. (*Id.*).

---

[1] The immigration judge's written order denying Konate's release notes that he was found to be "a danger to the community." (Bond Order, Dkt. No. 1-5). Both petitioner and respondents agree that designation was in

During the May 22 bond hearing, the government presented evidence that Konate had been convicted of a misdemeanor for obstructing police. (DHS Bond Submission 7). It also submitted evidence that he had been arrested and charged with larceny and credit card fraud. (*Id.* at 4). According to the government, those charges remained pending. (*Id.*). In addition, the government represented that on March 22, 2023, Konate had been arrested for flight to avoid prosecution and that those charges also remained pending. (*Id.* at 4).

In response, Konate, through counsel, presented evidence that the larceny and credit card fraud charges had been dismissed. (Konate Bond Submission 40, 43). He also submitted letters of support from mothers of his children, friends, and family, including from his fiancée. (*Id.* at 8-22, 33-37). He did not request that the immigration judge consider alternatives to detention at the hearing. (Bond Hearing Recording, at 4:23-7:30).

The immigration judge did not issue a written decision; instead, she delivered her findings orally. She found that Konate did not meet the standard for dangerousness but stated that "considering everything before the court," the government had met its burden "by a preponderance of the evidence" that he posed a flight risk. (Bond Hearing Recording, at 7:30-8:30). She cited Konate's criminal history (including his misdemeanor conviction and prior charges), his immigration history, his limited family ties conferring benefits, and his engagement. (*Id.*).

Konate reserved his right to appeal the immigration judge's bond determination at the hearing but did not appeal to the Board of Immigration Appeals ("BIA"). (Pet. ¶ 12).

---

error. (Pet. ¶ 11; Resp'ts' Opp'n 2 n.2, Dkt. No. 6). The recording of the bond hearing reflects that the immigration judge found that he was *not* a danger to the community. Rather, the judge determined that the government had met its burden to show that Konate presented a risk of flight and denied bond on that basis.

He later applied for three forms of relief from deportation based on his fear of returning to Burkina Faso. (Pet. ¶ 13). Following an evidentiary hearing on October 6, 2025, an immigration judge denied all of those applications. (*Id.*). He then appealed that denial to the BIA. (*Id.*). That appeal remains pending.

Konate filed a petition for a writ of habeas corpus in this Court on May 7, 2026. (Dkt. No. 1). The petition alleges that his Fifth Amendment right to due process was violated on the grounds that (1) he did not receive a constitutionally adequate bond hearing, because the immigration judge applied the incorrect standard of proof and failed to consider alternatives to detention, and (2) he has suffered a prolonged detention without a further bond hearing in violation of his constitutional rights. (Pet. ¶¶ 44-55).

## II. Discussion

The Court has jurisdiction under 28 U.S.C. § 2241 to grant writs of habeas corpus filed by noncitizens held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The government nonetheless contends that this Court cannot or should not reach the merits of petitioner's claims.

First, it maintains that 8 U.S.C. § 1226(e) deprives the court of jurisdiction to hear petitioner's due-process challenge to his bond hearing. That statute provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond of parole." 8 U.S.C. § 1226(e).

Second, it asks the Court to decline jurisdiction under the doctrine of administrative exhaustion because petitioner did not appeal his bond determination to the BIA. *See* 8 C.F.R. §§ 236.1(d)(3), 1003.19(f).

The Court "has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)). Because the Court finds that petitioner must exhaust his administrative remedies, it will not reach the issue of whether it has jurisdiction to review the constitutionality of the adequacy of the bond proceedings or petitioner's continued detention.

**A. <u>Administrative Exhaustion</u>**

A plaintiff must generally "exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan*, 503 U.S. 140, 144-45 (1992); *see also Brito v. Garland*, 22 F.4th 240, 255 (1st Cir. 2021). That requirement "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy*, 503 U.S. at 145.

There are two types of exhaustion: statutory and common-law. *Brito*, 22 F.4th at 255. Statutory exhaustion deprives a federal court of jurisdiction to review claims that should have properly been raised before the agency in the first instance. *Id.* Common-law administrative exhaustion "cedes discretion to a federal court to decline the exercise of jurisdiction." *Id.* (citation modified) (quoting *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 174 (1st Cir. 2016)). It gives "federal courts . . . some leeway to relax" the general exhaustion requirement. *Anversa*, 835 F.3d at 176.

Here, the government concedes that no statutory exhaustion requirement governs petitioner's due-process challenge to his bond proceedings. *See also Brito*, 22 F.4th at 255-56 (explaining that although "some statutory exhaustion requirements apply to a noncitizen's petition for habeas corpus," the government pointed to none "that would govern . . . pre-removal-order due process claims"). Rather, it asks the Court to require administrative exhaustion under

the "more permissive" common-law doctrine. *Id.* at 256.

In determining whether to relax the exhaustion requirement, "courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *Anversa*, 835 F.3d at 176 (quoting *McCarthy*, 503 U.S. at 146). That "analysis is intensely practical, because attention is directed to both the nature of the claim presented and the characteristics of the particular administrative procedure provided." *Id.* (citation modified) (quoting *McCarthy*, 503 U.S. at 146).

The Supreme Court has identified "three 'sets of circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion.'" *Id.* (quoting *McCarthy*, 503 U.S. at 146). First, waiver of the exhaustion requirement may be warranted "when 'requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action.'" *Id.* (quoting *McCarthy*, 503 U.S. at 146-47). Such prejudice may arise when agency action is unreasonably or indefinitely delayed or "a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim." *McCarthy*, 503 U.S. at 147. Second, exhaustion may be excused "when an administrative remedy may be insufficient because the agency is powerless to grant effective relief or incompetent to adjudicate the claims at issue." *Anversa*, 835 U.S. at 176 (citing *McCarthy*, 503 U.S. at 147-48). Third, an administrative remedy may be inadequate "when the administrative body is clearly biased." *Id.* (citing *McCarthy*, 503 U.S. at 148-49).

**B. <u>Analysis</u>**

The first issue concerns petitioner's interest in prompt access to a federal judicial forum. He contends that requiring exhaustion (1) would cause irreparable harm from his ongoing detention pending administrative review; (2) would be futile because the immigration courts lack the authority to adjudicate his constitutional claims; and (3) would place any remedy in the hands

of an adjudicator "unwilling[] or [u]nabl[e] fairly to consider the evidence and interpret the law." (Pet. ¶ 23). The Court will address each in turn.

There is no question that unlawful detention constitutes irreparable harm. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("[F]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."); *Mirabelli v. Bonta*, 607 U.S. 492, 497 (2026) (per curiam) ("The denial of plaintiffs' constitutional rights during the potentially protracted appellate process constitutes irreparable harm.").

Nonetheless, several factors weigh against finding that requiring administrative exhaustion would impose such a harm here. Petitioner had an initial bond hearing and therefore has received some modicum of process. Although he alleges that the process he received was inadequate, it is not the case that he is being detained without any individualized review.

The BIA is also in a better position than this Court to provide relief from detention. The BIA treats dangerousness and flight risk as a "question of judgment" that it reviews *de novo*. *See Matter of Z-N-L-*, 29 I. & N. Dec. 511, 511 (BIA 2026) (citing 8 C.F.R. § 1003.1(d)(3)(ii)). It may therefore reweigh the evidence and substitute its own judgment for that of the immigration judge's. This Court's review is necessarily narrower. Section 1226(e) provides that the "Attorney General's discretionary judgment" regarding "the detention of any alien or the revocation or denial of bond or parole" is not "subject to review" and cannot be "set aside." 8 U.S.C. § 1226(e). Whatever else that provision permits, § 1226(e) plainly forecloses the discretionary review that the BIA undertakes as a matter of course. It is the BIA—not this Court—that is fully empowered to grant petitioner's requested relief.

Petitioner contends that any BIA review of his detention order would have been

unreasonably delayed. It is surely true that at some point a prolonged detention without due process while awaiting administrative review constitutes irreparable harm. Petitioner has not, however, established that such a review in his case would have been unreasonably delayed. He relies on several district court cases that in turn cite an Executive Office for Immigration Review statistic that the average processing time for bond appeals was more than 200 days in 2024. *See Miti v. Moniz*, 827 F. Supp. 3d 206, 216 (D. Mass. 2026); *Garcia v. Hyde*, 817 F. Supp. 3d 112, 125 (D.R.I. 2025); *Picado v. Hyde*, 2026 WL 352691, at *6 (D.R.I. Feb. 9, 2026); *Gomes v. Hyde*, 804 F. Supp. 3d 265, 272 (D. Mass. 2025). That statistic certainly suggests that processing times in May 2025 were likely to have been lengthy. But because petitioner did not seek any review of his bond hearing, the Court cannot conclusively determine whether his detention pending BIA review would have been unreasonably delayed or indefinite.

Nor is it apparent that pursuing agency review would have been futile. Due-process challenges to immigration proceedings generally do not require exhaustion, because immigration courts lack the authority to review constitutional claims. *See Bernal-Vallejo v. I.N.S.*, 195 F.3d 56, 64 (1st Cir. 1999) ("There are some claims of denial of due process or deprivation of constitutional rights that are exempt from this exhaustion requirement because the BIA has no power to address them.").

However, procedural errors that are correctable can be appealed to the BIA. *See Lima v. Holder*, 758 F.3d 72, 82 (1st Cir. 2014) (finding that "alleged procedural errors, repackaged as due process claims, . . . could have been corrected by the BIA"). Improper burden-shifting in violation of due-process rights is one such procedural error. *See Mendes v. I.N.S.*, 197 F.3d 6, 11 (1st Cir. 1999) (declining to excuse administrative exhaustion because petitioner had not raised his claim to the BIA and "the alleged burden shifting was the type of procedural error that the

BIA could have addressed"). Petitioner's claim that the immigration judge applied the incorrect burden of proof would therefore likely have been correctable by the BIA.

Petitioner further contends that the BIA would have imposed a standard that the First Circuit has found to violate due process. The First Circuit in *Hernandez-Lara v. Lyons*, 10 F.4th 19 (2021), held that due process entitles a noncitizen detained pursuant to 8 U.S.C. § 1226(a) to a bond hearing in which the government bears the burden of proving dangerousness by clear and convincing evidence and risk of flight risk by a preponderance of the evidence. *Id.* at 41. Under immigration regulations, a § 1226(a) detainee bears the burden to prove that he is neither a danger to the community nor a flight risk. *Id.* at 24 (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)).

Petitioner has not, however, shown that the BIA would have applied the lower standard to his case. The BIA is "bound to follow the law of the circuit court of appeals in which a case arises." *Matter of Garcia*, 28 I. & N. Dec. 693, 700 n.7 (B.I.A. 2023); *see Matter of Anselmo*, 20 I. & N. Dec. 25, 31 (B.I.A. 1989). The BIA has reviewed bond hearings under a heightened standard when dictated by circuit precedent. *See, e.g.*, *Matter of Dobrotvorskii*, 29 I. & N. Dec. 211, 215 (BIA 2025). Petitioner has not demonstrated that the BIA would have declined to do so here.

Similarly, petitioner could have raised his claim concerning alternatives to detention before the immigration judge. The First Circuit in *Brito v. Garland*, 22 F.4th 240 (2021), declined to excuse the administrative exhaustion requirement for petitioners who failed to ask their respective immigration judges to consider alternatives to detention at their bond hearings. *Id.* at 255-56. It reasoned that "the agency is better equipped than . . . the federal courts to determine what alternatives to detention an [immigration judge] has the authority to enforce" and

"may be amenable to providing appropriate redress in the first instance." *Id.* at 256 (citation modified). *Brito* suggests that petitioner's alternatives-to-detention claim is not futile and should have been raised at his bond hearing.

Petitioner has likewise failed to establish that the BIA had predetermined his case or was clearly biased. There is no evidence that any member of the BIA has expressed a view on the merits of his detention. *See, e.g.*, *Houghton v. Shafer*, 392 U.S. 639, 640 (1968) (finding that administrative review that culminated with a state attorney general would be futile in light of his submission that the challenged rules were "validly and correctly" applied to the petitioner). While the Court certainly is aware that recent changes in the BIA have generally resulted in decisions more favorable to the government, it is not clear how that translates to a review of findings of dangerousness or flight risk. (Pet.'s Reply 13, Dkt. No. 7). More is required to show that the process is so biased and so predetermined that petitioner would have been unable to obtain fair review.

On the other side of the scale, the Court must consider the countervailing institutional interests favoring exhaustion. The Court gives significant weight to the fact that Congress crafted a remedial scheme that explicitly precludes judicial review of bond determinations. *See* 8 U.S.C. §1226(e). Although a habeas court has jurisdiction to review constitutional claims, the statutory scheme favors giving the agency "an opportunity to correct its own mistakes." *McCarthy*, 503 U.S. at 145. Requiring exhaustion thus respects congressional intent. *See* *Anversa*, 835 F.3d at 175 ("Insisting upon exhaustion . . . respects congressional prerogative by 'prevent[ing] litigants from bypassing Congress' carefully crafted remedial scheme.'") (alteration in original) (quoting *Irizarry v. United States*, 427 F.3d 76, 79 (1st Cir. 2005)).

The Court acknowledges that it has become common practice in many courts for

immigration detainees to seek habeas relief from an adverse bond determination without ever pursuing an appeal to the BIA. But "exhaustion principles apply with special force when 'frequent and deliberate flouting of administrative processes' could weaken an agency's effectiveness by encouraging disregard of its procedures." *McCarthy*, 503 U.S. at 145 (quoting *McKart v. United States*, 395 U.S. 185, 195 (1969)); *see also Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (explaining that courts may insist on exhaustion where "relaxation of the requirement would encourage the deliberate bypass of the administrative scheme"). Where Congress has enacted a specific process, and explicitly circumscribed judicial review, the federal courts exercising habeas authority should not, as a matter of routine, be the first line of review of administrative decisions.

The Court also acknowledges that there may well be widespread due-process violations in the course of immigration bond hearings. But petitioner has presented no evidence of such a pattern. And the BIA cannot correct such abuses if detainees never appeal adverse bond determinations.

Judicial efficiency also favors requiring exhaustion. As discussed, the BIA has greater authority to grant relief from detention than this Court. Requiring the BIA's *de novo* review of petitioner's detention may grant the relief petitioner ultimately seeks and moot this petition. *See McCarthy*, 503 U.S. at 145.

Finally, because petitioner did not appeal his bond determination, this Court does not have a full record on which to review. According to the Immigration Court Practice Manual, the decisions of immigration judges are usually rendered orally. "If either party appeals, the

Immigration Judge prepares a written decision based on notes from the hearing."[2] Indeed, the immigration judge did not issue a written decision here because petitioner declined to appeal. Creating a "useful record for subsequent judicial consideration" is "especially important 'in a complex or technical factual context' like" a due-process challenge to a bond proceeding. *Brito*, 22 F.4th at 256 (citation modified) (quoting *Anversa*, 835 F.3d at 176) (declining to waive exhaustion because, among other reasons, petitioners' failure to raise an alternative-to-detention claim before the immigration judge meant there was an insufficient record to review).

In sum, there is a substantial institutional interest in requiring petitioner to appeal his denial of bond to the BIA before turning to the federal courts. Insisting on exhaustion provides a proper record on which to review; respects Congress's remedial scheme; is consistent with this Court's limited role; and provides the BIA an opportunity to timely correct errors and thus to promote judicial efficiency. While prolonged detention pending BIA review may amount to a constitutional violation and excuse exhaustion, petitioner here has not been detained pending such a review, as he never appealed his detention order. Under the circumstances presented here, the Court concludes that petitioner was required to exhaust his administrative remedies before pursuing relief in federal court. The petition will therefore be denied.

## III. <u>Conclusion</u>

For the foregoing reasons, the petition for writ of habeas corpus is DENIED without prejudice.

**So Ordered.**

---

[2] U.S. Dep't of Just., Exec. Off. for Immigr. Rev., Off. of the Chief Immigr. Judge, *Immigration Court Practice Manual* 136 (2020), https://www.justice.gov/eoir/media/1052736/dl?inline [https://perma.cc/UP8X-ALMT].

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
United States District Judge

Dated: August 25, 2026